UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAQUAR PRATCHER, 14-B-1577,

                           Petitioner,

-vs-

SUPERINTENDENT, GREAT MEADOW
CORRECTIONAL FACILITY,[1]

                           Respondent.

DECISION AND ORDER

6:17-CV-6702 CJS

_____

INTRODUCTION

     Petitioner Shaquar Pratcher ("Pratcher" or "Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Supreme Court, Erie County, of Murder in the Second Degree, New York Penal Law § 125.25[3] (felony murder), for which he was sentenced principally to a term of imprisonment of 25 years to life.  Petitioner's conviction following a bench trial "arises from a home invasion burglary during which the 96–year–old victim sustained, among other injuries, a subdural hematoma and so many broken facial bones that his skull remained distorted when he died approximately five months later." *People v. Pratcher*, 134 A.D.3d 1522, 1522, 22 N.Y.S.3d 757, 758 (2015).  The Petition asserts that the conviction was unconstitutional because the Prosecution failed to prove beyond a reasonable doubt that the injuries inflicted on the elderly male victim during the burglary

---

[1] Petitioner commenced this action against Joseph Noeth, then Superintendent of Attica Correctional Facility where Petitioner was housed.  However, according to the website of the New York State Department of Corrections and Community Supervision ("DOCCS"), Petitioner is now housed at Great Meadow Correctional Facility.  The proper respondent is the Superintendent of the facility the has custody of Petitioner.  Accordingly, the Court will direct the Clerk of the Court to amend the caption of the action to reflect Petitioner's current location.

1

were the proximate cause of his death.  The Petition alleges, rather, that the victim died from injuries sustained in a fall following the burglary and/or from neglect by a caregiver.  For the reasons explained below, the petition for a writ of habeas corpus is denied.

BACKGROUND

The reader is presumed to be familiar with the facts of this action.  Briefly, the evidence at trial showed that on November 24, 2012, Petitioner and three other young men set out to commit a burglary at 99 Longview Avenue in Buffalo, New York, which was the home of Paula Smith ("Smith").  The men suspected that Smith was a drug dealer and that large amounts of cash and drugs would be found in the house.  Also living at that address was a 96-year-old man, Levi Clayton ("Clayton").[2]  Despite Clayton's advanced age, he was mostly self-sufficient, was able to feed and wash himself, and had only recently given up driving a car.

Upon arriving at the residence, the burglars could see that someone was inside. Nevertheless, three of the burglars, including Petitioner, who was armed with a pistol, entered the home.  Once inside, they encountered Clayton, who yelled and attempted to throw a lamp at Petitioner.  Petitioner reportedly responded by punching Clayton in the face several times, causing numerous fractures to Clayton's jaw and skull.[3]  Plaintiff reportedly later told one of his accomplices that while he was punching Clayton he felt Clayton's jaw go "soft."  The burglary netted the perpetrators a few hundred dollars, and Petitioner accidentally shot himself in the leg while fleeing the scene.  Smith returned to the ransacked home and found Clayton lying in a fetal position in his bed, injured and unable to communicate.  However, Smith had installed

---

[2] Petitioner maintains that the house actually belonged to Clayton, who allowed Smith to live with him after she was released from prison.  Petitioner alleges that Smith was selling drugs from the home, which is why the house was targeted for burglary. *See*, Appellate Br. at p. 2.
[3] Two of Petitioner's co-defendants received plea bargains in exchange for their testimony against Petitioner. Petitioner, though, has always denied that he personally struck Clayton and claims that he passed a polygraph test on that point.

surveillance cameras at the house, which enabled the police to rather quickly identify the perpetrators.

According to Respondent's Memorandum of Law, the factual recitation of which Petitioner has not disputed, the burglary and attack

> left Levi Clayton with eight facial fractures and a chronic subdural hematoma. 453, 455. On top of the eight simple fractures to his face, Clayton had countless fractures in his sinus cavity. 462. Clayton's orbital was fractured and his jaw was fractured in three places. 460–61.  It was the opinion of forensic pathologist Dianne Vertes that Clayton was struck more than once and that the injuries were consistent with [his being struck with] a fist or a pistol. 462–63.
>
> ***
>
> From November 24, 201,2 to December 9, 2012, Clayton was at ECMC  [(Erie County Medical Center)]. 43. He struggled mightily, not even knowing who Smith was although she had lived with him until the assault . 43. Ella Goree [("Goree")], who knew Clayton for 20 years prior to the assault, indicated that Clayton was not communicative during this period. 270. By December 6th, Clayton's weight had dropped from 202 pounds to 181. 465–66.
>
> On December 9, 2012, Clayton was discharged from ECMC to Elderwood, an assisted living facility. 270. Clayton was still combative and did not communicate with others, but he would drink and eat during this time. 270–71.  At this point, he still did not know who Smith was. 44.
>
> On February 23, 2012, Clayton fell and had to be readmitted to ECMC. 45.  By that point, Clayton's weight had plummeted to 161 pounds, a loss of 41 pounds in the three months since the attack. 465, 467. The fall, combined with Clayton's chronic subdural hematoma which was caused by the assault, caused an acute subdural hematoma. 456.
>
> ***
>
> Clayton was discharged two days later, at which point Goree took him to her home to care for him. 46, 212. Although Clayton's body was physically present at her house, he had no idea why he was there and did not remember what had happened to him. 272. He had to wear Depends because he was incontinent. *Id*. During this period, however, he started to intermittently remember his loved ones and his weight stabilized. 46–47, 467.

> A few days prior to April 2, 2013, Clayton stopped eating and drinking. 298. On April 2nd, he had an appointment at the VA Hospital, but could not stand up. 273. Goree called an ambulance, which took Clayton to the VA Hospital. 273.
>
> When admitted, Clayton was severely dehydrated and malnourished due to his refusal to eat or drink. 298, 301. The dehydration issue was resolved and fixed at the VA Hospital. 616. However, on April 8, 2013, Clayton died of "failure to thrive." 477. The medical examiner explained that this means that Clayton could not maintain homeostasis, eat properly, or carry out the functions he needed to carry [out] to survive after the injury. 477-78.
>
> Prior to the assault, Clayton had some medical conditions, such as hypertensive cardiovascular disease, chronic obstructive pulmonary disease, and Alzheimers-type dementia. 468-69.
>
> [However,] [i]t was [forensic pathologist] Vertes' expert opinion that the assault had set into motion a 'slow inexorable march toward death.' 538. The assault was the pivotal point that set Clayton on a downhill course to death. 470. Vertes confirmed that nothing could have caused Clayton to recover from the assault [and] that it rendered his death inevitable. 471. The official cause of death [given by Vertes] was complications from blunt force facial and head trauma. 470.[4]

ECF No. 6 at pp. 7–10 (internal citations are to the trial record).

Two of the four perpetrators received plea deals in exchange for their testimony against Petitioner and co-defendant Elhajji Elshabazz ("Elshabazz"), who were both convicted after a joint bench trial. At sentencing, Petitioner's attorney noted that Petitioner had been willing to plead guilty to the burglary but not felony murder, and that, "there was only one issue at the trial. It wasn't the burglary, everyone admitted they went in there. The issue was the medical, the cause of Mr. Clayton's death."[5]

---

[4] The autopsy report authored by Vertes listed the cause of death as "complications of blunt force facial and head trauma," and noted that the assault had left Clayton blind in one eye and with a compromised ability to eat due to facial and jaw fractures. The report further stated: "But for his beating, it is considerably less likely that his death would have occurred when it did or that his quality of life would have been so compromised as to lead to failure to thrive."

[5] Sentencing Tr. at p. 4.

4

Following his conviction, Petitioner filed a direct appeal and argued, *inter alia*, that "the evidence was insufficient to prove guilt beyond a reasonable [doubt]." Pet. at p. 2.  Rather, Petitioner argued that there was "overwhelming evidence that the proximate cause of Levi Clayton's death was 'failure to thrive' due to endstage dementia[.]"[6]  However, the New York State Supreme Court, Appellate Division Fourth Department, denied the appeal and stated, in pertinent part:

> Here, there was evidence from several sources corroborating the testimony of the accomplices. The testimony of the accomplices established the way in which the crime was committed, including that they and defendant used cell phones throughout the incident. In addition, one of the accomplices testified that, after the incident, defendant said that "the old man wouldn't shut up . . .  so he had to hit him[, and] when he hit him, he felt his jaw getting soft." The accomplices also testified that they heard a gunshot as they fled the scene of the burglary, and defendant told one of them that he accidentally had shot himself in the leg while hopping a fence.
>
> In support of that testimony, the People introduced corroborating evidence from several sources tending to show that the accomplices were telling the truth and that defendant was one of the perpetrators. First, there is overwhelming evidence establishing that the crime occurred in the manner in which the accomplices testified . . . .  There is also overwhelming medical evidence establishing that the victim was savagely beaten during the incident.
>
> Moreover, there is also sufficient corroborating evidence tending to connect defendant with the commission of the crime.  . . .  The People also introduced expert medical testimony establishing that the victim sustained numerous facial fractures of his orbital, sinus, and jaw bones, which is consistent with defendant's statement that he felt the victim's "jaw getting soft." Based on all the evidence, we conclude that the testimony of the accomplices was sufficiently corroborated inasmuch as the evidence "'tend[ed] to connect the defendant with the commission of the crime in such a way as [could] reasonably satisfy the [factfinder] that the accomplice[s] [were] telling the truth' " ([*People v Reome*, 15 N.Y.3d 188,] 192, 906 N.Y.S.2d 788, 933 N.E.2d 186; *see* CPL 60.22[1]; *People v. Robinson*, 111 A.D.3d 1358, 1358, 975 N.Y.S.2d 830, *lv. denied* 22 N.Y.3d 1141, 983 N.Y.S.2d 499, 6 N.E.3d 618).

---

[6] Appellate Br. at p. 1, Questions Presented.

Defendant further contends that the evidence is not legally sufficient to establish that the injuries that the victim sustained during the commission of the crimes were the cause of his death approximately five months later. Although defendant moved for a trial order of dismissal, he did not contend in that motion that the victim's death was not the foreseeable result of the injuries the victim sustained during the commission of the crimes, and thus failed to preserve his legal sufficiency contention for our review (*see People v. Gray*, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919; *see also People v. Ingram*, 67 N.Y.2d 897, 899, 501 N.Y.S.2d 804, 492 N.E.2d 1220). In any event, it has long been the rule in New York that "'[i]f a person inflicts a wound ... in such manner as to put life in jeopardy, and death follows as a consequence of this felonious and wicked act, it does not alter its nature or diminish its criminality to prove that other causes cooperated in producing the fatal result. Indeed, it may be said that neglect of the wound or its unskillful and improper treatment, which were of themselves consequences of the criminal act, which might naturally follow in any case, must in law be deemed to have been among those which were in contemplation of the guilty party, and for which he is to be held responsible'" (*People v. Kane*, 213 N.Y. 260, 274, 107 N.E. 655). Thus, "[f]or criminal liability to attach, a defendant's actions must have been an actual contributory cause of death, in the sense that they 'forged a link in the chain of causes which actually brought about the death'" (*Matter of Anthony M.*, 63 N.Y.2d 270, 280, 481 N.Y.S.2d 675, 471 N.E.2d 447). Additionally, the "defendant's acts need not be the sole cause of death; where the necessary causative link is established, other causes, such as a victim's preexisting condition, will not relieve the defendant of responsibility for homicide ... By the same token, death need not follow on the heels of injury" (*id*. at 280, 481 N.Y.S.2d 675, 471 N.E.2d 447).

Here, the evidence established that defendant repeatedly struck the 96–year–old victim in the face and head, thereby fracturing the victim's orbit, sinuses, and jaw in numerous places and causing a subdural hematoma, and that many of those injuries had not healed at the time of his death approximately five months later. Thus, we conclude that "the ultimate harm, *i.e.*, death, was a 'reasonably foreseeable result of [that] conduct'" (People v. Cox, 21 A.D.3d 1361, 1362–1363, 802 N.Y.S.2d 813, lv. denied 6 N.Y.3d 753, 810 N.Y.S.2d 421, 843 N.E.2d 1161). Although defendant's expert testified that the victim died of his advancing Alzheimer's-type dementia, the Medical Examiner testified that the injuries that the victim sustained in this attack were the cause of his death. Thus, the court "was presented with conflicting expert testimony regarding the cause of death, and the record supports its decision to credit the People's expert testimony" (*People v.*

> *Fields*, 16 A.D.3d 142, 142, 789 N.Y.S.2d 888, lv. denied 4 N.Y.3d 886, 798 N.Y.S.2d 731, 831 N.E.2d 976; *see generally People v. Miller*, 91 N.Y.2d 372, 380, 670 N.Y.S.2d 978, 694 N.E.2d 61). Consequently, we conclude that, although other possible causes of the victim's death were not eliminated, the medical evidence, viewed in the light most favorable to the prosecution, is legally sufficient to establish that defendant's acts "were at least a contributing cause of" the victim's death (*Anthony M.*, 63 N.Y.2d at 281, 481 N.Y.S.2d 675, 471 N.E.2d 447). We further conclude that, with respect to all of the charges, the evidence, viewed in the light most favorable to the People (*see People v. Contes*, 60 N.Y.2d 620, 621, 467 N.Y.S.2d 349, 454 N.E.2d 932), is legally sufficient to support the conviction. Viewing the evidence in light of the elements of the crimes in this bench trial (*see People v. Danielson*, 9 N.Y.3d 342, 349, 849 N.Y.S.2d 480, 880 N.E.2d 1), we further conclude that the verdict is not against the weight of the evidence (*see generally People v. Bleakley*, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672).

*People v. Pratcher*, 134 A.D.3d 1522, 1522–25, 22 N.Y.S.3d 757, 759–61 (2015), *leave to appeal denied*, 27 N.Y.3d 1154 (Jul. 1, 2016).

Petitioner filed the subject *pro se* petition asserting a single ground for relief, namely, that the Prosecution had not proven beyond a reasonable doubt that Clayton's death was causally related to the burglary and assault. In particular, the Petition states:

> The People failed to prove Petitioner's guilt beyond a reasonable doubt. The proximate cause of the victim's death was failure to thrive due to end stage dementia, not injuries sustained in the assault. The deceased suffered a fractured jaw and injury around the eye and was hospitalized. Ten days later the victim was discharged from Erie Medial Center and placed at Elderwood Skilled Nursing Facility to attend to his Alzheimer's-type dementia. While at Elderwood, the victim fell to the floor while transferring from a wheelchair to a chair. The deceased was returned to ECMC, but after two days he was released from ECMC. But instead of going back to Elderwood, the victim was released to the care and custody of Ella Goree who knew nothing about home care attending. During the five week period that the victim was released to Ella Goree, the deceased's health began to drastically deteriorate. As a result, the victim was taken, and admitted, to Veteran's Administration Hospital on April 2, 2013, and eight days later, the victim died.

ECF No. 1 at pp. 5–6.

Respondent's papers (ECF Nos. 5, 6) argue that the Petition lacks merit since according to the expert testimony of Vertes, the assault by Petitioner was, in fact, the cause of Clayton's death since it "marked the beginning of the end of Clayton's life[;] he died four months later of complications from that assault."[7] In that regard, Respondent points out that under New York law, "[i]n order to be a 'sufficiently direct cause,' the petitioner's conduct [need only] 'set in motion the events which ultimately result in the victim's death," and "need not be the sole cause of death." ECF No. 6 at p. 11 (citing *People v. Matos*, 83 N.Y.2d 509 (1994); other citation omitted). Respondent argues that under New York law, neither the fact that Clayton had preexisting medical conditions, nor the fact that Clayton may have received sub-optimal care from Goree, nor the fact that the death occurred almost five months after the assault, relieves Petitioner of legal responsibility for Clayton's death. *Id*. at pp. 13-17.

Petitioner did not file a reply or traverse.

## DISCUSSION

### Petitioner's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### Evidentiary Hearing Not Required

Pursuant to Rule 8 of Rules Governing Habeas Corpus cases under Section 2254 in the United States District Courts and upon review of the answer, transcript and record, the Court determines that an evidentiary hearing is not required.

---

[7] ECF No. 6 at p. 3.

Section 2254 Principles

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles applicable to such a claim are well settled.

> As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and interpreted by the Supreme Court, 28 U.S.C. § 2254—the statutory provision authorizing federal courts to provide habeas corpus relief to prisoners in state custody—is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). A number of requirements and doctrines . . . ensure the centrality of the state courts in this arena. First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance. *See id*. (citing 28 U.S.C. § 2254(b)). Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions. *See generally Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). If the state court denies a federal claim on the merits, then the provisions of § 2254(d) come into play and prohibit federal habeas relief unless the state court's decision was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1)-(2). Finally, when conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim. *See Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388, 1398–99, 179 L.Ed.2d 557 (2011).

*Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014). As just mentioned, regarding claims that were decided on the merits by state courts,

> a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

> A state court decision is contrary to clearly established Federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's result.
>
> A state court decision involves an unreasonable application of clearly established Federal law when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. To meet that standard, the state court's decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. It is well established in this circuit that the objectively unreasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11, 2018) (Koeltl, J.) (citations and internal quotation marks omitted).

"A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court." *Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) and *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998)); *see also, Guerrero v. LaManna*, 325 F. Supp. 3d 476, 483 (S.D.N.Y. 2018) ("The role of federal courts reviewing habeas petitions is not to re-examine the determinations of state courts on state law issues, but only to examine federal constitutional or statutory claims. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Federal courts deciding habeas petitions do not serve as appellate courts to review state court decisions of state law claims. Their purpose instead is to review whether the circumstances surrounding the petitioner's detention 'violate fundamental liberties of the person, safeguarded against state action by the Federal Constitution.' *Townsend v. Sain*, 372 U.S. 293, 311–312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Habeas petitions may not simply repackage state

law claims, which have previously been found to be meritless, in order to obtain review. *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004).").

A claim that a conviction was against the weight of the evidence is a state-law argument that is not cognizable in a federal § 2254 habeas action, while a claim that the conviction was unsupported by sufficient evidence will only succeed in such an action where the evidence was insufficient to permit any rational juror to find guilt beyond a reasonable doubt:

> [T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus, *see, e.g., Correa v. Duncan*, 172 F.Supp.2d 378, 381 (E.D.N.Y.2001), *Douglas v. Portuondo*, 232 F.Supp.2d 106, 116 (S.D.N.Y.2002); *see also Estelle*, 502 U.S. at 67–68, 112 S.Ct. 475, and as a matter of federal constitutional law a jury's verdict may only be overturned if the evidence is insufficient to permit any rational juror to find guilt beyond a reasonable doubt, *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Policano v. Herbert*, 507 F.3d 111, 116 (2d Cir.2007).

*McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011); *see also*, *Blackshear v. Artus*, No. 917CV143MADDJS, 2019 WL 6837719, at *3 (N.D.N.Y. Dec. 16, 2019) ("Review of a conviction as against the 'weight of the evidence' is a product of New York state statute and, therefore, merely a state-law issue for which no cognizable federal issue is presented.").

<u>The Instant Petition</u>

The Court observes at the outset that another District Judge in this Circuit has already rejected an identical insufficient-evidence claim by Petitioner's co-defendant, Elshabazz, who was tried along with Petitioner at the same bench trial.[8] More specifically, in *Elshabazz v. Graham*, 18-CV-6160L, W.D.N.Y., the Honorable David Larimer stated, in pertinent part:

> Petitioner's first ground for relief is that there was insufficient evidence at trial that the assault on the victim during the burglary caused the victim's death over four

---

[8] *See*, Appellate Br. at p. 4 (joint trial).

11

months later. The Appellate Division rejected this argument for the reasons stated in its decision in the appeal of petitioner's codefendant Pratcher. *See People v. Elshabazz*, 145 A.D.3d at 1529 (citing *People v Pratcher*, 134 AD3d 1522, 1524-25 (2015), *leave to appeal denied*, 27 N.Y.3d 1154 (2016)). In *Pratcher*, the court, noting the severity of the victim's injuries and the medical examiner's testimony that those injuries were the cause of his death, held that "the medical evidence, viewed in the light most favorable to the prosecution, [wa]s legally sufficient to establish that defendant's acts were at least a contributing cause of the victim's death," which was sufficient to support a murder conviction under New York law. 134 A.D.3d at 1525 (internal quote omitted).

"It is well established that a 'weight of the evidence' claim does not provide a basis for federal habeas relief." *Clark [v. Noeth]*, 351 F.Supp.3d [369,] 372 [(W.D.N.Y.)] (citing *Ward v. Herbert*, 509 F.Supp.2d 253, 264 & n.3 (W.D.N.Y. 2007)). *See also McKinnon v. Superintendent*, 422 F.App'x 69, 75 (2d Cir. 2011) ("[T]he argument that the verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus") (citing cases).

Although habeas relief might be available if the state court's factual findings represent an "unreasonable determination of the facts," in the sense that "reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding, or where the court ignored highly probative material evidence," *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (citations omitted), this is not such a case.  As the Appellate Division noted, the evidence established that petitioner's co-defendant [Pratcher], with whom he participated in the burglary, "repeatedly struck the 96-year-old victim in the face and head, thereby fracturing the victim's orbit, sinuses, and jaw in numerous places and causing a subdural hematoma, and that many of those injuries had not healed at the time of his death approximately five months later." *Pratcher*, 134 A.D.3d at 1525.  Although the defense presented expert testimony that the victim died from other causes, the trial court was free to credit the testimony of the medical examiner that the injuries inflicted during the assault were at least a contributing cause of death, which is sufficient to support a guilty verdict under New York law.  In short, petitioner has not carried his "very heavy burden" to show that the state court's findings were so lacking in evidentiary support as to state a federal habeas claim. *Cherry v. New York*, 521 F.Supp.3d 295, 302 (W.D.N.Y. 2021) (noting that the standard for assessing the sufficiency of the evidence to support a guilty verdict is the same under both federal and New York state law).

*Elshabazz v. Graham*, 18-CV-6160L, ECF No. 13, Decision and Order dated October 18, 2021 at pp. 4–5 (Larimer, J.).

This Court adopts that same reasoning and therefore finds that Pratcher's petition lacks merit. Viewing the evidence in the light most favorable to the state, a rational trier of fact could have found Petitioner guilty of felony murder under New York law (Penal Law § 125.25[3]) beyond a reasonable doubt.[9]

## CONCLUSION

The application under 28 U.S.C. § 2254 is denied. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

Petitioner, who was confined at Attica when he commenced this action, has never provided the Court with an updated address. However, since DOCCS's website indicates that Petitioner is currently housed at Great Meadow Correctional Facility, the Clerk of the Court is

---

[9] *See, e.g., Love v. Smith*, No. CV-08-3746BMC, 2009 WL 2422384, at *3 (E.D.N.Y. Aug. 6, 2009) ("A petitioner seeking relief based on insufficient evidence must meet a high legal threshold. The Supreme Court has held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). All inferences must be drawn in favor of the prosecution. *See Fama v. Commr. of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir.2000). In considering the sufficiency of the evidence supporting a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999).") (footnote omitted).

directed to terminate Joseph Noeth, Superintendent of Attica Correctional Facility, as a party to this action and to substitute Superintendent of Great Meadow Correctional Facility as Respondent. The Clerk is further directed to mail a copy of this Decision and Order to Petitioner at both Attica and Great Meadow. Finally, the Clerk of the Court is directed to close this case.

So Ordered.

Dated: Rochester, New York
April 25, 2022

ENTER:

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge